UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON COLEMAN, #252207,

        Plaintiff,        Civil Action No. 13-13147
                              Honorable Arthur J. Tarnow
                              Magistrate Judge David R. Grand
v.

RN TOPLE, H.U.M. NIXON, DR.
BORGEDINE, DR. EDELMAN, DR.
PANDYA, DR. COLEMAN, CORIZON
HEALTH INC., PA GEML, AETNA LIFE
INSURANCE, RICHARD RUSSELL, C.
WILLIAMS, JOHN DOE (MRF EYE DOCTOR),
E. TAYLOR, J. SCOTT, DIRECTOR HEYNS,
MAURICE HILLS, and THOMAS COMBS,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [41], TO
GRANT DEFENDANTS' MOTIONS TO DISMISS [11, 28, 62], AND TO
SUMMARILY DISMISS THE REMAINDER OF PLAINTIFF'S COMPLAINT**

**I.    REPORT**

    **A.    Background**

On July 23, 2013, Plaintiff Deon Coleman ("Plaintiff") filed a *pro se* complaint against fourteen defendants: RN Tople, H.U.M. Nixon, Dr. Borgedine [sic – Borgerding], Dr. Edelman, Dr. Pandya,[1] Dr. Coleman, Corizon Health Inc., PA Geml, Aetna Life Insurance, Richard Russell, C. Williams, John Doe (MRF Eye Doctor), E. Taylor, and J. Scott. (Doc. #1). In his complaint, Plaintiff alleges that he has been wrongly delayed and denied orthopedic footwear,

---

[1] On March 11, 2014, this Court granted Plaintiff's "Motion to Correct the Name of Defendant" (Doc. #7), terminating Dr. Pandya as a defendant and adding Dr. Squire. (Doc. #66).

despite meeting the criteria for such shoes. (*Id.* at 3). Plaintiff further alleges denial of medication and failure to refer him to an outside eye specialist. (*Id.*). On January 8, 2014, this case was referred by the Hon. Arthur J. Tarnow to the undersigned for all pretrial purposes. (Doc. #21).

Over time, service was accomplished on ten of the defendants named in Plaintiff's complaint (only H.U.M. Nixon, John Doe (MRF Eye Doctor), Dr. Squire, and Aetna Life Insurance have not been served).[2] On December 20, 2013, several defendants employed by the Michigan Department of Corrections – including Richard Russell, Christine Tople, Cheryl Williams, Eutrilla Taylor, and Joe Scott (collectively the "MDOC Defendants") – filed a motion to dismiss Plaintiff's complaint. (Doc. #11). Plaintiff filed a response to that motion on December 30, 2013. (Doc. #13). On January 24, 2014, MDOC Defendant William Borgerding also filed a motion to dismiss Plaintiff's complaint. (Doc. #28). Plaintiff filed a response to Dr. Borgerding's motion on February 4, 2014. (Doc. #42). That same day, Plaintiff filed a motion for partial summary judgment "as to the liability of Defendants." (Doc. #41). In addition, on March 7, 2014, Corizon Health, Inc., and its employees, Adam Edelman, Rickey Coleman, and Patrick Geml (collectively the "Corizon Defendants"), filed a motion to dismiss Plaintiff's complaint. (Doc. #62). Plaintiff filed a response to that motion on April 2, 2014 (Doc. #94), and the Corizon Defendants filed a reply on April 14, 2014 (Doc. #95).

While these dispositive motions were pending, Plaintiff filed two pleadings in which he sought to voluntarily dismiss his complaint without prejudice. (Doc. #91, 103). As a result, on May 2, 2014, this Court issued a Report and Recommendation to grant Plaintiff's motion for

---

[2] As set forth in greater detail below, where Plaintiff was previously approved to proceed *in forma pauperis* (Doc. #4), the Court finds it appropriate to recommend dismissal of Plaintiff's claims against these individuals/entities for failure to state a claim, pursuant to 28 U.S.C. §1915(e)(2), despite the fact that they have not yet been served.

voluntary dismissal without prejudice and to deny as moot the parties' pending motions. (Doc. #106). Subsequently, however, Plaintiff sought to withdraw his motion for voluntary dismissal and indicated a desire to proceed with this litigation. (Doc. #107). Accordingly, this Court issued an Order on May 12, 2014, vacating its prior Report and Recommendation and indicating that it would decide the parties' pending dispositive motions (Doc. #11, 28, 41, 62). (Doc. #111). These motions are now ripe for ruling. The Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time. *See* E.D. Mich. L.R. 7.1(f).

      **B.**     **Plaintiff's Complaint**

Plaintiff filed the underlying action pursuant to 42 U.S.C. §1983, alleging that he has been denied medical care in violation of the Eighth Amendment. In particular, Plaintiff contends that (1) he was denied orthopedic footwear despite meeting the applicable shoe guidelines; (2) he was improperly prescribed Tegretol for pain, which caused him to suffer vision loss; and (3) he was denied access to an eye specialist. (Doc. #1 at 3-5).

Although Plaintiff's complaint lists the names of the MDOC Defendants (Tople, Borgerding, Russell, Williams, Taylor, and Scott) and the Corizon Defendants (Corizon, Coleman, Edelman, and Geml), he makes *no specific factual allegations against any of these defendants* other than – perhaps – Dr. Coleman.[3] (Doc. #1). With respect to Dr. Coleman, Plaintiff appears to allege that he acknowledged Plaintiff's vision loss (as purportedly diagnosed

---

[3] It is unclear from Plaintiff's complaint whether he is in fact alleging wrongdoing by Corizon Defendant Rickey Coleman. Specifically, Plaintiff asserts in his complaint that "officials have acknowledge[d] eye damage [glaucoma] as the specialist at Kresge Eye Center diagnosed 12-20-12 [Dr. Coleman at Kresge] the conspiracy by health officials is the denial to provide a prisoner outside [optometrist] access …." (Doc. #1 at 4). Thus, it appears that Plaintiff is referencing a "Dr. Coleman" employed by the Kresge Eye Institute, not by Corizon. But, because the Corizon Defendants assumed that Plaintiff's allegations were made against Dr. Rickey Coleman (Doc. #62 at 13-14), the Court will analyze them accordingly.

3

by an outside specialist) and noted a causal connection between Tegretol and Plaintiff's vision loss, but "health officials" did not return Plaintiff to an outside eye specialist. (*Id.* at 4).

### C. Evidence Submitted by Plaintiff

Plaintiff has filed numerous pleadings with the Court since initiating this lawsuit, some of which have included his medical records. For example, Plaintiff submitted evidence showing that his request for special shoes was denied because a medical provider determined that he did not meet the criteria set forth in the applicable guidelines. (Doc. #41 at 9, 26, 31; Doc. #42 at 21). Nonetheless, the evidence submitted by Plaintiff shows that he *was* provided special accommodation orders for an ankle brace, assistance carrying his tray in the chow hall, bottom bunk detail, and a cane. (Doc. #31 at 52-53; Doc. #41 at 5-6, 8, 31). He also was continuously followed by the disability clinic regarding his Pain Management Committee plan of care. (Doc. #41 at 9). Records submitted by Plaintiff further confirm that he was scheduled to see an optometrist in December 2012 and again in April or May 2013. (Doc. #31 at 21; Doc. #41 at 22; Doc. #42 at 23). Moreover, in response to an inquiry from Plaintiff in January 2014 about antibiotic eye drops and new eyeglasses, Plaintiff was advised that the optometrist would be visiting the facility later that month and would be asked to order Plaintiff's antibiotic and write a new eyeglass prescription at that time. (Doc. #42 at 26).

### D. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (internal quotations omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a Rule 12(b)(6) motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss

5

so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**E.    Analysis**

In their motions, both the MDOC Defendants and the Corizon Defendants argue that Plaintiff's complaint should be dismissed because it does not give them sufficient notice of the basis of his claims against certain named defendants, and because he fails to state a claim for deliberate indifference to a serious medical need with respect to the remaining defendants.[4]

In order to demonstrate liability under §1983, a plaintiff must first establish that each named defendant acted under color of state law and that his or her actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137 (1989). The Supreme Court demands that a plaintiff identify how each defendant, through his or her "own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "When suing an individual actor … for constitutional violations under §1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if

---

[4] The MDOC Defendants also argue that Plaintiff's claims against them should be dismissed on the basis of qualified immunity. Because the Court finds dismissal appropriate on other grounds, it need not reach the merits of this argument.

6

not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal citations omitted). "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations …." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original) ("Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) ("Frazier's complaint contained no specific facts in support of his conclusory allegations that the defendants violated his constitutional and statutory rights. Moreover, Frazier failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights."); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.") (emphasis in original).

In this case, Plaintiff makes *no allegations whatsoever* in his complaint as to Defendants Tople, Borgerding, Russell, Williams, Taylor, Scott, Edelman, Geml, or Corizon. Indeed, these defendants are not even mentioned in the body of Plaintiff's complaint. His "Statement of Facts" and the allegations contained in his complaint provide no information as to what actions each of these defendants allegedly took that were in violation of his constitutional rights. This is simply insufficient, as "it is impossible for any of these individuals to ascertain what particular

7

unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250.[5] For this reason alone, Plaintiff's complaint fails to state a claim against these nine defendants.

In response to the arguments advanced by the MDOC Defendants and the Corizon Defendants in their motions to dismiss, and in his own motion for partial summary judgment, Plaintiff – for the first time – makes *some* allegations (albeit very vague) against *some* of these nine defendants. For example, in certain pleadings, Plaintiff asserts that Tople, Williams, and Geml failed or refused to provide insoles, cushions, or any type of orthopedic footwear, or to refer Plaintiff to an outside specialist. (Doc. #13 at 1-2; Doc. #41 at 2; Doc. #94 at 2). Plaintiff further asserts that Borgerding stopped prescribing him Ultram for pain and, instead, prescribed Tegretol, which Plaintiff alleges has caused a "serious life long loss of vision." (Doc. #42 at 1). Additionally, Plaintiff asserts that Geml, Tople, and Edelman failed to send him to an outside eye specialist. (Doc. #94 at 3). It is clear, however, that even taking Plaintiff's allegations as true, he has failed to state a claim under the Eighth Amendment.

---

[5] The same is true with respect to the four yet-unserved defendants: HUM Nixon, Aetna Life Insurance, John Doe (MRF Eye Doctor), and Dr. Squire. Plaintiff has made no specific allegations regarding these defendants in his complaint, and they are not named anywhere in the body of that pleading. In one of his pleadings, Plaintiff asserts that it was Dr. Squire who authorized the prescription of Tegretol for Plaintiff's pain; subsequently, he asserts that Dr. Squire was one of several individuals who failed to refer him to an outside eye specialist. (Doc. #31 at 2; Doc. #94 at 3). As is true for the other individual defendants, however, Plaintiff's allegations amount to nothing more than a disagreement with the medical treatment he received, which is insufficient to state a claim for violation of the Eighth Amendment. For this reason, the Court recommends dismissal of Plaintiff's complaint against these four defendants pursuant to 28 U.S.C. §1915(e)(2)(B) (a Court "shall dismiss the case ***at any time*** if the court determines that … the action … fails to state a claim upon which relief can be granted") (emphasis added). *See also Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (noting that while Congress enacted 28 U.S.C. §1915 to "ensure that indigent litigants have meaningful access to the federal courts," it also "recognized … that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."); *Wilson v. Napoleon*, 2012 WL 4849892, at *3 (E.D. Mich. Oct. 11, 2012) (dismissing plaintiff's complaint *sua sponte* even after finding that it survived a motion to dismiss based on exhaustion of remedies).

The Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). An Eighth Amendment claim has two components, one objective and one subjective. To meet the objective prong, a plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the subjective prong, a plaintiff must demonstrate that the defendant acted with deliberate indifference. *See Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010). More specifically, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer*, 511 U.S. at 837.

As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted).

The records provided by Plaintiff, as well as the factual allegations made by Plaintiff in

9

his pleadings, demonstrate that none of the individual defendants were deliberately indifferent to a serious medical need. For example, with respect to the denial of orthopedic footwear, Plaintiff alleges that Geml, Williams, and Tople ignored the "shoe guidelines" and wrongly refused to approve his request for orthopedic shoes. (Doc. #94 at 2). Plaintiff provides no further elaboration of this allegation and, indeed, the records Plaintiff himself submitted show that his request for orthopedic shoes was denied because he did not meet the criteria of the guidelines, which a medical provider discussed with him. (*Id.* at 26, 37-39, 45, 50). Because Plaintiff's own evidence refutes any suggestion that these individuals were deliberately indifferent to a serious medical need, these claims are without merit and should be dismissed.

The same is true with respect to Plaintiff's assertions that Geml, Tople, Edelman, and Coleman failed to send him to an outside eye specialist for his purported vision loss. (Doc. #94 at 3). Plaintiff admits that he was seen by a specialist at the Kresge Eye Institute in December 2012. (Doc. #1 at 3; Doc. #42 at 1). Moreover, Plaintiff's own evidence reveals that he was scheduled to see an optometrist in December 2012, and again in April or May of 2013. (Doc. #31 at 21; Doc. #42 at 23; Doc. #41 at 22). Plaintiff further acknowledges having continued eye examinations at Duane Waters Hospital. (Doc. #94 at 3). Indeed, he submitted numerous records to the Court demonstrating that he has received ongoing medical care for his vision complaints, including optometry appointments, antibiotics, and prescriptions for glasses. (*Id.* at 17-19, 26, 29-30, 32, 34-35, 57, 61-64). Thus, by Plaintiff's own admission, as well as the evidence contained in the records he provided to the Court, Geml, Tople, Edelman, and Coleman have not ignored Plaintiff's concerns; rather, they have taken action to address his issues (albeit perhaps not in the exact fashion that Plaintiff would have liked). It is clear that Plaintiff simply does not like the treatment he has received at Duane Walters Hospital, which he contends is

provided by interns who are unable to properly diagnose him.  (*Id.* at 3).  As this Court has recognized, however, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment."  *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted).  *See also Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004) (holding that a difference of opinion or disagreement between a prisoner and prison medical staff over the kinds of treatment the prisoner needs do not rise to the level of deliberate indifference).

Finally, Plaintiff asserts that Dr. Borgerding was deliberately indifferent to a serious medical need when he allegedly stopped prescribing Ultram for pain and, instead, prescribed Tegretol (which Plaintiff contends is an anti-seizure medication).  (Doc. #42 at 1).  Plaintiff asserts that Tegretol has caused a "life long loss of vision." (*Id.*).  Even assuming that the Court considers these allegations – which were not specifically set forth in Plaintiff's complaint – there is no indication in the records submitted by Plaintiff that Dr. Borgerding was involved in prescribing Tegretol to Plaintiff.  (*Id.* at 5, 6, 18, 27).  Only one document on which Plaintiff relies even mentions Dr. Borgerding, and that document indicates that a request was sent to him for approval of "short term use of Ultram."  (*Id.* at 27).  There is no indication as to whether this request was approved or denied, and there is no evidence that Dr. Borgerding prescribed Tegretol.  Moreover, Plaintiff's underlying basis for his claim – that he was prescribed an improper medication – sounds in medical malpractice, which, as discussed above, is not an appropriate claim under the Eighth Amendment.  *See Comstock*, 273 F.3d at 703.  For these reasons, Plaintiff's claim against Dr. Borgerding also should be dismissed.

In sum, the allegations contained in Plaintiff's pleadings establish that his concerns about his ankle and eyes were repeatedly addressed by medical professionals. To accommodate his ankle injury, he was provided with an ankle brace, assistance carrying his tray in the chow hall, bottom bunk detail, and a cane. (Doc. #31 at 52-53; Doc. #41 at 5-6, 8, 31). He was seen by outside eye specialists at both the Kresge Eye Institute and Duane Walters Hospital, as well as by internal optometrists. (Doc. #1 at 4; Doc. #31 at 21; Doc. #41 at 22; Doc. #42 at 23). Where Plaintiff's own admissions and the records he submitted demonstrate that he received treatment and medication for his conditions, Plaintiff simply cannot succeed on a deliberate indifference claim against any of the individual defendants.[6]

## II.   RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment (**Doc. #41**) be **DENIED**. **IT IS FURTHER RECOMMENDED** that the MDOC Defendants' Motions to Dismiss (**Docs. #11, 28**) and the Corizon Defendants' Motion to Dismiss (**Doc. #62**) be **GRANTED** and that Plaintiff's Complaint be **DISMISSED IN ITS ENTIRETY AND WITH PREJUDICE**.

Dated: July 17, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

---

[6] For the same reasons, summary judgment in Plaintiff's favor should be denied. Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). When the plaintiff moves for summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Specifically, his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Here, where the evidence establishes that Plaintiff has failed to state a claim against any of the defendants, summary judgment in his favor is inappropriate.

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2014.

> s/Eddrey O. Butts
> EDDREY O. BUTTS
> Case Manager